# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICHARD ALLEN BAHAM,

Defendant-Appellant.

FOR PUBLICATION
September 12, 2017
9:00 a.m.

No. 331787
Cass Circuit Court
LC No. 15-010125-FH

Before: HOEKSTRA, P.J., and MURPHY and K. F. KELLY, JJ.

PER CURIAM.

Defendant pleaded guilty to manufacturing methamphetamine, MCL 333.7401(2)(b)(*i*), operating or maintaining a laboratory involving methamphetamine, MCL 333.7401c(2)(f), and possession of methamphetamine, MCL 333.7403(2)(b)(*i*). Defendant filed a delayed application for leave to appeal, which this Court denied. Defendant then sought leave to appeal in the Michigan Supreme Court. In lieu of granting leave to appeal, the Supreme Court remanded "this case to the Court of Appeals for consideration as on leave granted." *People v Baham*, 500 Mich 945; 890 NW2d 658 (2017). On remand, because the factual basis for defendant's plea supported his convictions, defendant's convictions did not violate double jeopardy, and defendant was not denied the effective assistance of counsel, we affirm.

In May of 2015, police arrested defendant after discovering that he was operating a mobile methamphetamine laboratory in his vehicle. Defendant was charged with five criminal offenses and given notice that he could be sentenced as a fourth-habitual offender. The prosecutor offered defendant a plea deal, pursuant to which defendant would plead guilty to manufacturing methamphetamine, operating or maintaining a methamphetamine laboratory, and possession of methamphetamine. In exchange, the prosecutor agreed to the dismissal of charges for maintaining a drug house, MCL 333.7405(1)(d), and operating a vehicle while his license was suspended, second offense, MCL 257.904(3)(b). The prosecutor also agreed that defendant could be sentenced as a second habitual offender as opposed to a fourth-offense habitual offender. At the plea hearing, the trial court engaged in the following colloquy with defendant to ascertain the factual basis for defendant's plea:

> *The court*: The Count I offense charges you with manufacture of [sic] making some methamphetamine.
>
> Is that true, did you make some methamphetamine?

-1-

*Defendant*:  Yes.

*The court*:  Did you know the substance that you were manufacturing or making was, in fact, methamphetamine?

*Defendant*: Yes, sir.

*The court*:  And the Count II charge says that you were operating or maintaining a laboratory to make methamphetamine.

Does that mean that you had chemicals or the necessary components to make it?

*Defendant*:  Yes.

*The court*:  And did you make it in a building or a residence that was under you control?

*Defendant*:  Um, a vehicle, yes, sir.

*The court*:  In a vehicle?

*Defendant*:  Yes.  Yes, I did.

*The court*:  All right, and was that a vehicle of yours or one you controlled?

*Defendant*:  Yes.

*The Court*:  Did you know that the stuff was there, the components in the vehicle, that you could use to make meth?

*The Defendant*:  Yes, sir.

*The court*:  Were you successful, did you end up possessing some methamphetamine as a result of your manufacturing?

*Defendant*:  One more time, please?

*The court*:  Were you successful?  Did you end up possessing some meth that you made?

*Defendant*:  Yes.

*The court*:  Because that's the Count III charge; that's why I'm asking you about that.  It says you possessed some methamphetamine.

Is that true, did you possess some methamphetamine that you had cooked or made?

*Defendant*: Yes.

*The court*: And you knew that substance was, in fact, methamphetamine; is that right?

*Defendant*: Yes.

Based on these admissions by defendant, the trial court accepted defendant's guilty plea, finding that it was factually supported. In keeping with the plea bargain, the trial court sentenced defendant as a second-habitual offender, MCL 769.10, to concurrent terms of 51 months' to 30 years' imprisonment for manufacturing methamphetamine and operating or maintaining a methamphetamine laboratory as well as a concurrent sentence of 117 days for the possession of methamphetamine. The case is now before us on remand from the Michigan Supreme Court for consideration as on leave granted.

## I. PERSONAL USE EXCEPTION

On appeal, defendant first argues that his guilty plea for manufacturing methamphetamine should be set aside because, as set forth in MCL 333.7106(3)(a), there is a "personal use" exception to prohibitions on manufacturing a controlled substance and, absent evidence that defendant did not intend to use the methamphetamine for personal use, the factual basis for his manufacturing conviction was lacking and trial counsel was ineffective for not raising this issue. We disagree.

Initially, we note that defendant never filed a motion to withdraw his guilty plea in the trial court. Under MCR 6.310(D), defendant's failure to file a motion to withdraw his guilty plea bars him from raising on appeal the argument that his plea was not an accurate one. In particular, MCR 6.310(D) states:

> A defendant convicted on the basis of a plea may not raise on appeal any claim of noncompliance with the requirements of the rules in this subchapter, or any other claim that the plea was not an understanding, voluntary, or accurate one, unless the defendant has moved to withdraw the plea in the trial court, raising as a basis for withdrawal the claim sought to be raised on appeal.

Defendant's challenge to the factual basis for his plea implicates the accuracy of his plea, and thus his claim falls squarely within the ambit of MCR 6.310(D). Because a motion to withdraw a plea constitutes a prerequisite for challenging the accuracy of a plea and defendant has not filed such a motion, our direct substantive review of this appellate argument is precluded under MCR 6.310(D). *People v Armisted*, 295 Mich App 32, 48; 811 NW2d 47 (2011).

However, defendant has also raised his argument as an ineffective assistance claim, asserting that counsel provided ineffective assistance by not raising the personal use issue in the trial court. While our direct substantive analysis of the personal use issue is precluded by MCR 6.310(D), this rule does not prevent us from considering the personal use exception in the context of an ineffective assistance argument. As demonstrated by the Supreme Court order in *People v Broyles*, 498 Mich 927; 871 NW2d 209 (2015), a claim of ineffective assistance of

counsel can serve as a basis for relief relative to a plea despite a failure to comply with MCR 6.310. Specifically, the Court observed and ruled:

> On order of the Court, the application for leave to appeal the April 17, 2015 order of the Court of Appeals is considered and, pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE the Kent Circuit Court's order denying the defendant's motion for plea withdrawal and/or to correct an invalid sentence and we REMAND this case to the Kent Circuit Court. That court shall treat the defendant's January 26, 2015 supplemental brief and February 20, 2015 supplemental motion as timely filed and evaluate the defendant's issues on the merits. The defendant's attorney acknowledges that the defendant did not contribute to the delay in filing a proper motion and admits her sole responsibility for the error. Because a motion to withdraw a plea or correct an invalid sentence is a prerequisite to substantive review on direct appeal under MCR 6.310 and MCR 6.429, the defendant was effectively deprived of his direct appeal as a result of constitutionally ineffective assistance of counsel. [*Broyles*, 498 Mich 927-928.]

Following the reasoning in *Broyles*, while we may not directly address the personal use exception on appeal, we may consider it to determine whether counsel's failure to properly raise this issue in the trial court, and to file a motion to withdraw a plea on this basis, constituted the ineffective assistance of counsel.

 "To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "Effective assistance of counsel is presumed, and defendant bears a heavy burden to prove otherwise." *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

To determine whether counsel provided ineffective assistance of counsel in this case, it is necessary to consider the factual basis for defendant's plea and the applicability of the personal use exception. Under MCR 6.302(D)(1), if a defendant pleads guilty, "the court, by questioning the defendant, must establish support for a finding that the defendant is guilty of the offense charged or the offense to which the defendant is pleading." "When reviewing whether the factual basis for a plea was adequate, this Court considers whether the fact-finder could have found the defendant guilty on the basis of the facts elicited from the defendant at the plea proceeding." *People v Fonville*, 291 Mich App 363, 377; 804 NW2d 878 (2011). "Where the statements by a defendant at the plea procedure do not establish grounds for a finding that the defendant committed the crime charged, the factual basis for the plea-based conviction is lacking." *People v Mitchell*, 431 Mich 744, 748; 432 NW2d 715 (1988).

Whether the conduct admitted by a defendant falls within the scope of the criminal statute at issue is a question of statutory interpretation. *People v Adkins*, 272 Mich App 37, 39; 724 NW2d 710 (2006). The goal of statutory interpretation is to ascertain the legislature's intent.

-4-

*People v Perry*, 317 Mich App 589, 604; 895 NW2d 216 (2016). We begin with the plain language of the statute, interpreting words according to their ordinary meaning and within the context of the statute in order to give effect to the statute as a whole. *Id.* "[W]here that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *People v Barrera*, 278 Mich App 730, 736; 752 NW2d 485 (2008) (citation and quotation marks omitted).

Under the Public Health Code, methamphetamine is a Schedule 2 controlled substance. MCL 333.7214(c)(*ii*). The manufacture of controlled substances is prohibited by MCL 333.7401(1), which states, in relevant part, that "a person shall not manufacture, create, deliver, or possess with intent to manufacture, create, or deliver a controlled substance. . . ." "The elements of manufacturing a controlled substance are: (1) the defendant manufactured a substance, (2) the substance manufactured was the controlled substance at issue, and (3) the defendant knowingly manufactured it." *People v Bosca*, 310 Mich App 1, 23; 871 NW2d 307 (2015).

In this case, defendant admitted that he made methamphetamine and that he did so knowingly. The question is whether his cooking or making of methamphetamine constitutes the illegal "manufacture" of methamphetamine in light of the personal use exception set forth in MCL 333.7106(3)(a) as part of the definition of "manufacture." In particular, the term "manufacture" is defined in the Public Health Code as follows:

"Manufacture" means *the production, preparation, propagation, compounding, conversion, or processing of a controlled substance*, directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis. It includes the packaging or repackaging of the substance or labeling or relabeling of its container, *except that it does not include either of the following*:

(a) *The preparation or compounding of a controlled substance by an individual for his or her own use.*

(b) The preparation, compounding, packaging, or labeling of a controlled substance by either of the following:

(*i*) A practitioner as an incident to the practitioner's administering or dispensing of a controlled substance in the course of his or her professional practice.

(*ii*) A practitioner, or by the practitioner's authorized agent under his or her supervision, for the purpose of, or as an incident to, research, teaching, or chemical analysis, and not for sale. [MCL 333.7106(3) (emphasis added).]

Given the plain language of § 7106(3)(a), it is clear that an individual who engages in the "preparation or compounding of a controlled substance . . . for his or her own use" cannot be found guilty of manufacturing a controlled substance within the meaning of § 7106(3). See *People v Pearson*, 157 Mich App 68, 72; 403 NW2d 498 (1987). However, contrary to

defendant's argument, it does not follow that the factual basis for his plea was invalid simply because the trial court did not elicit information to exclude the possibility that defendant intended to use the resulting methamphetamine for his own personal use.

First of all, defendant mischaracterizes § 7106(3)(a) by suggesting that it provides a broad exemption for *any* manufacturing done for personal use. In actuality, as set forth in § 7106(3), in relevant part, the definition of "manufacture" provides a list of six activities which constitute manufacturing: production, preparation, propagation, compounding, conversion, and processing.[1] From this list of six activities, the personal use exception, as set forth in § 7106(3)(a), includes only two of these activities: preparation and compounding. "Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion." *People v McFall*, 309 Mich App 377, 385; 873 NW2d 112 (2015) (citation and quotation marks omitted). By defining "manufacture" to include six activities and then including only two of those six activities under the personal use exception, the Legislature made clear that a personal use exception applies for "preparation or compounding," but that there is no similar personal use exception for production, propagation, conversion, or processing. *Pearson*, 157 Mich App at 72. See also Mich Crim JI 12.1, Use Note 4. The Legislature has thus drawn a clear distinction between "preparation or compounding" as compared to the other methods of manufacturing identified in § 7106(3).

Given this distinction, in considering the meaning of "preparation" and "compounding" in comparison to the other methods of manufacturing, it is also readily apparent that the personal use exception applies only to a controlled substance already in existence and it does not encompass the creation of a controlled substance. *Pearson*, 157 Mich App at 71-72. Specifically, as most relevantly defined, the term "preparation" means "the action or process of making something ready for use . . . ." *Merriam-Webster's Collegiate Dictionary* (2014). Likewise, in pertinent part, "compounding" denotes the action or process of putting "together (parts) so as to form a whole," such as by combining ingredients. *Merriam-Webster's Collegiate Dictionary* (2014) (defining "compound" and "-ing"). Adhering to these ordinary definitions, as we recognized in *Pearson*, "the plain intent of the statutory personal use exception is to avoid imposing felony liability on individuals who, already in possession of a controlled substance, make it ready for their own use or combine it with other ingredients for use."[2] *Pearson*, 157

---

[1] Manufacturing also includes "packing or repackaging" of a controlled substance as well as "labeling or relabeling of its container." MCL 333.7106(3). However, it is undisputed that these activities are not at issue in this case and that defendant is not entitled to the exception for practitioners set forth in § 7106(3)(b).

[2] We are not alone in this understanding of the personal use exception as set forth in *Pearson*. Consistent with *Pearson*, numerous state courts interpreting the terms "preparation" and "compounding" have concluded that the personal use exception applies "when [an] individual is already in possession of the controlled substance and is simply making it ready for use . . . or combining it with other ingredients for use." See, e.g., *State v Wilson*, 421 NJ Super 301, 308; 23 A3d 489 (2011); *State v Bossow*, 274 Neb 836, 846; 744 NW2d 43 (2008); *Owens v State*,

Mich App at 71 (citation omitted). Typical examples of preparation or compounding often involve marijuana, specifically making marijuana ready for use by "rolling marijuana into cigarettes for smoking" or combining marijuana with other ingredients to make it ready for use by "making the so-called 'Alice B. Toklas' brownies containing marijuana." *Stone v State*, 348 Ark 661, 667; 74 SW3d 591 (2002) (citation omitted). In both instances, the controlled substance already exists in finished form and any further action is undertaken merely to enable use of the substance.

In contrast to preparation and compounding, the other four methods of manufacturing controlled substances—i.e., production, propagation, conversion, and processing—"contemplate a significantly higher degree of activity involving the controlled substance" and thus these manufacturing activities are felonies regardless of "whether the controlled substance so 'manufactured' was for personal use or for distribution." *Pearson*, 157 Mich App at 71 (citation omitted). While we do not attempt to provide an exhaustive account of the activities that constitute production, propagation, conversion and processing, we note that "production" has been statutorily defined as: "the manufacture, planting, cultivation, growing, or harvesting of a controlled substance." MCL 333.7109(6). In turn, "manufacture" means "to make" from materials. *Merriam-Webster's Dictionary* (2014). In comparison, as commonly understood, (1) "propagation" involves "the act or action of propagating," such as to "increase (as of a kind of organism) in numbers," (2) "conversion" is "the act of converting," and (3) "processing" refers to "a series of actions or operations conducing to an end" or "a continuous operation or treatment esp. in manufacture." *Merriam-Webster's Dictionary* (2014). From these various definitions, courts have recognized that production, propagation, conversion and processing encompass "planting, growing, cultivating or harvesting of a controlled substance," *creating* a controlled substance "by any synthetic process or mixture of processes," as well as the alteration or extraction of a controlled substance, such as "taking a controlled substance and, by any process or conversion, changing the form of the controlled substance or concentrating it." *Childers*, 41 NC App at 732. See also *People v Hunter*, 201 Mich App 671, 676-677; 506 NW2d 611 (1993).

In view of these different methods of manufacturing, following the reasoning set forth in *Pearson*, we hold that one may not claim the personal use exception for making or cooking methamphetamine.[3] Making or cooking methamphetamine clearly involves the creation of methamphetamine, meaning that it constitutes production, propagation, conversion, or processing of methamphetamine as opposed to the mere "preparation or compounding" of

325 Ark 110, 124; 926 SW2d 650 (1996); *State v Underwood*, 168 W Va 52, 58; 281 SE2d 491 (1981); *State v Boothe*, 285 NW2d 760, 762 (Iowa Ct App). Although decisions from other states are not precedentially binding, they may be considered persuasive. See MCL 333.1111(1); MCL 333.7121(2); *People v Thompson*, 477 Mich 146, 155 n 9; 730 NW2d 708 (2007).

[3] Our decision today rests in large part on the reasoning and analysis performed by this Court in *Pearson*, wherein we similarly determined that growing marijuana is not protected by the personal use exception. *Pearson*, 157 Mich App at 71-72. As a published decision of this Court decided before November 1, 1990, *Pearson* is not precedentially binding. MCR 7.215(J)(1). Nevertheless, we consider *Pearson* persuasive and we use it as a guide. See *People v Barbarich*, 291 Mich App 468, 476 n 2; 807 NW2d 56 (2011).

existing methamphetamine for personal use. As such, the personal use exception does not apply, and one who knowingly makes or cooks methamphetamine is guilty of manufacturing methamphetamine without regard to whether the methamphetamine will be distributed or used personally.[4]

Turning to the present facts, at the plea hearing, when describing his activities, defendant admitted that he had chemicals and components to make methamphetamine, that he was "manufacturing or making" methamphetamine, and that he had "cooked or made" methamphetamine. Clearly, defendant admitted to the creation of methamphetamine, and his factual admissions were sufficient to support the conclusion that defendant produced, propagated, converted, or processed methamphetamine in contravention of MCL 333.7401(1) and MCL 333.7406(3). In contrast, this level of activity is not consistent with the assertion that defendant engaged in "preparation or compounding" of existing methamphetamine merely to make it ready for use. Defendant is, therefore, ineligible for the personal use exception, and it is immaterial whether or not defendant cooked methamphetamine for his own use or for distribution purposes. In sum, the personal use exception simply had no bearing on this case, and the trial court's failure to exclude the possibility of personal use does not undermine the factual basis of defendant's plea.

In concluding that the trial court obtained a sufficient factual basis for defendant's plea, we also note that the personal use exception is an affirmative defense to a charge of manufacturing a controlled substance, meaning that it was not an element of the crime on which the trial court had to elicit factual support for defendant's plea. MCL 333.7401(1) creates a general prohibition on the manufacturing of controlled substance. While there are potential exceptions to this general prohibition, pursuant to MCL 333.7531(1),[5] when offering proof of the elements of the offense, the prosecution has no obligation to negate any exemption or exception in Article 7 of the Public Health Code, which includes the personal use exception in § 7106(3). Instead, "[t]he burden of proof of an exception or exception is upon the person claiming it." MCL 333.7531(1). Once the prosecution has presented a prima facie case of manufacturing a controlled substance, the burden shifts to the defendant to present some competent evidence regarding the applicability of the personal use exception. See MCL 333.7531(1); *People v Pegenau*, 447 Mich 278, 293; 523 NW2d 325 (1994); *People v Hartuniewicz*, 294 Mich App 237, 245-246; 816 NW2d 442 (2011). In other words, the personal use exemption functions as

---

[4] Other courts interpreting comparable personal use provisions have likewise determined that making or cooking methamphetamine is not protected by the personal use exception. See, e.g., *Stallard v State*, 225 Md App 400, 412; 124 A3d 1165 (2015); *Owens*, 325 Ark at 124. Though these cases are not binding, we find them persuasive and consistent with Michigan's statutory provisions. See *Thompson*, 477 Mich at 155 n 9.

[5] MCL 333.7531(1), which is contained in Article 7 of the Public Health Code, states: "It is not necessary for this state to negate any exemption or exception in this article in a complaint, information, indictment, or other pleading or in a trial, hearing, or other proceeding under this article. The burden of proof of an exemption or exception is upon the person claiming it."

an affirmative defense, and the prosecutor is not required to disprove personal use as an element of the offense. Cf. *Pegenau*, 447 Mich at 293; *Hartuniewicz*, 294 Mich App at 245. Accordingly, if defendant believed he was entitled to a personal use defense, the burden was on defendant to raise the issue as an affirmative defense and to present some competent evidence of preparation or compounding for personal use.

Rather than pursue this defense, defendant pleaded guilty; and, as we have discussed, his admissions provided an adequate factual basis for his plea. Further, because the inapplicability of the personal use exception is not an element of manufacturing a controlled substance, when accepting defendant's plea, the trial court did not have to exclude the possibility of preparation or compounding for personal use in order to find a factual basis to support the conclusion that defendant's admitted conduct fell within the scope of the criminal statute. See *Fonville*, 291 Mich App at 377; *Adkins*, 272 Mich App at 38. In other words, in accepting defendant's plea, the trial court was not obligated to examine defendant regarding potential defenses or to advise defendant of possible defenses. MCR 6.302(B)(1); *People v Burton*, 396 Mich 238, 242; 240 NW2d 239 (1976). At this juncture, having pleaded guilty and provided an adequate factual basis for his plea, defendant has waived the opportunity to assert a factual defense to the crime charged. *People v Jex*, 489 Mich 983; 799 NW2d 557 (2011). Given that defendant's challenges to the factual basis for his plea and his reliance on the personal use exception are without merit, it is also apparent that counsel did not provide ineffective assistance by failing to raise this meritless issue in the trial court. *Ericksen*, 288 Mich App at 201.

## II. DOUBLE JEOPARDY

Next, defendant argues that his convictions for manufacturing methamphetamine and possession of methamphetamine violate double jeopardy, and that trial counsel provided ineffective assistance by failing to raise this issue below.[6] Specifically, defendant contends that it is impossible to manufacture methamphetamine without also possessing methamphetamine, such that possession does not contain any element different than the elements required for manufacturing. Consequently, defendant maintains that he may not be convicted for both manufacturing and possessing the same unit of methamphetamine. We disagree.

The United States and the Michigan constitutions protect a defendant from being placed in jeopardy twice for the same offense. US Const, Am V; Const 1963, art 1, § 15. Defendant maintains that conviction and sentencing for both manufacturing methamphetamine and possession of methamphetamine violates double jeopardy by imposing multiple punishments for "the same offense." See *People v Calloway*, 469 Mich 448, 450; 671 NW2d 733 (2003).

> [W]hen considering whether two offenses are the "same offense" in the context of the multiple punishments strand of double jeopardy, we must first determine

---

[6] It is not apparent that a double jeopardy challenge would be precluded on direct appeal by MCR 6.310(D). However, even assuming that defendant's double jeopardy argument is also problematic under MCR 6.310(D), as we have discussed, it would be properly considered in the ineffective assistance context.

whether the statutory language evinces a legislative intent with regard to the permissibility of multiple punishments. If the legislative intent is clear, courts are required to abide by this intent. If, however, the legislative intent is not clear, courts must then apply the abstract legal elements test articulated in *Ream*[7] to discern legislative intent. [*People v Miller,* 498 Mich 13, 19; 869 NW2d 204 (2015).]

Under the abstracts legal elements test, "two offenses will only be considered the 'same offense' where it is impossible to commit the greater offense without also committing the lesser offense." *Id.* In other words, "it is not a violation of double jeopardy to convict a defendant of multiple offenses if each of the offenses for which defendant was convicted has an element that the other does not." *Id.* (citation and quotation marks omitted). "Because the statutory elements, not the particular facts of the case, are indicative of legislative intent, the focus must be on these statutory elements." *Ream*, 481 Mich at 238.

In this case, defendant was convicted under MCL 333.7401(2)(b)(*i*) and MCL 333.7403(2)(b)(*i*), neither of which evince a clear legislative intent with regard to the permissibility of multiple punishments. See *Miller*, 498 Mich at 19. Consequently, whether the Legislature intended multiple punishments for manufacturing and possession of a controlled substance is determined by applying the abstracts legal elements test.

"With respect to manufacturing methamphetamine, the elements are (1) the defendant manufactured a controlled substance, (2) the substance manufactured was methamphetamine, and (3) the defendant knew he was manufacturing methamphetamine." *People v Meshell*, 265 Mich App 616, 619; 696 NW2d 754 (2005). In comparison, to obtain a conviction under MCL 333.7403(2)(b), the prosecution must prove that the defendant "knowingly or intentionally possess[ed]" methamphetamine. "The element of possession . . . requires a showing of dominion or right of control over the drug with knowledge of its presence and character." *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 25460 (2003) (citation and quotation marks omitted). Possession may be actual or constructive, joint or exclusive. *Id.* at 166. "The essential issue is whether the defendant exercised dominion or control over the substance." *Id.*

Considering these elements, the offenses differ in that one requires the "manufacture" of a controlled substance and the other requires "possession" of a controlled substance. In particular, manufacturing methamphetamine requires proof that the defendant manufactured methamphetamine, while a conviction for possession of methamphetamine does not require proof of manufacturing. Conversely, possession of methamphetamine requires proof that the defendant possessed methamphetamine, while the manufacture of methamphetamine does not require proof of possession. Because each contains an element not required for the other, the two offenses are not the same offense for double jeopardy purposes. See *Miller*, 498 Mich at 19;

---

[7] *People v Ream*, 481 Mich 223; 750 NW2d 536 (2008).

*People v Welshans*, unpublished opinion of the Court of Appeals, issued December 9, 2014 (Docket No. 318040).[8]

In concluding that manufacturing and possession are not the "same offense," we do not ignore the practical reality that in many, if not most cases, proof of manufacturing a controlled substance will also establish the possession of a controlled substance. See, e.g., *Meshell*, 265 Mich App at 622-623 (considering manufacturing activities as evidence of possession). But, we are simply not prepared to state that possession is necessarily inherent in manufacturing or that it would be *impossible* to manufacture a controlled substance without also possessing it. See *Miller*, 498 Mich at 19. Previously, in concluding that possession is not a lesser included offense of delivering a controlled substance, we rejected a similar argument and we cautioned against injecting a possession requirement into the manufacturing and delivery statute, stating:

> One might argue that it is impossible for a party to manufacture, deliver or intend to manufacture or deliver a controlled substance without at least constructive possession of it. However, in our estimation, such an analysis unnecessarily adds the element of constructive possession to the crime. Requiring proof of constructive possession inappropriately creates a doorway through which drug traffickers, particularly those high in the distribution chain, can escape. [*People v Binder*, 215 Mich App 30, 35-36; 544 NW2d 714 (1996), vacated in part on other grounds by 453 Mich 915 (1996).]

The same is true of manufacturing insofar as individuals responsible for some aspect of manufacturing could attempt to escape responsibility by claiming a lack of dominion or right of control over the controlled substance despite the fact that the plain language of the manufacturing statue includes no element of "possession" with respect to the controlled substance. In actuality, manufacturing a controlled substance may be a process with various steps, and the Legislature broadly defined the term "manufacture" to encompass myriad activities in this process, including tasks that may potentially be carried out without a right of control over the substance such as labeling containers or mixing the brownie batter to which a controlled substance is added. See *People v Eggers*, unpublished opinion of the Court of Appeals, issued February 14, 2006 (Docket No. 256618); slip op at 5. Depending on the drug and the method of manufacturing, it is also possible that there will be no controlled substance to possess until the manufacturing process is complete; and, the fact that one undertakes the manufacture of a controlled substance is no guarantee that there will be a right of control or dominion over the finished product. Ultimately, while manufacturing may often involve possession, it is not invariably the case that one who manufactures a controlled substance will also have possession of the substance manufactured.[9]  Because it is not impossible to

---

[8] While unpublished opinions are not precedentially binding, MCR 7.215(C)(1), they may be considered for their persuasive value. *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004).

[9] See *Eggers*, slip op at 5. Courts in other jurisdictions have also reached this conclusion. See, e.g., *State v Davis*, 117 Wash App 702, 709; 72 P3d 1134 (2003) ("Although possession is

manufacture a controlled substance without also possessing that controlled substance, there is no double jeopardy violation arising from convictions for manufacture and possession of the same substance. See *Miller*, 498 Mich at 19.

In this case, defendant admitted both manufacturing methamphetamine and possessing methamphetamine. Although his conviction for possession stems from the possession of the same methamphetamine that he manufactured, possession and manufacturing are distinct offenses. Consequently, defendant's conviction and sentencing for both offenses does not violate double jeopardy. Having concluded that defendant's convictions did not violate double jeopardy, we also reject defendant's argument that counsel provided ineffective assistance by failing to raise this meritless argument in the trial court. See *Ericksen*, 288 Mich App at 201.

Affirmed.

/s/ Joel P. Hoekstra
/s/ William B. Murphy
/s/ Kirsten Frank Kelly

---

usually inherent in manufacture, that is not invariably the case . . . ."); *Galbreath v State*, 213 Ga App 80, 81; 443 SE2d 664 (1994) ("Possession of marijuana is not a necessary element of the crime of knowingly manufacturing marijuana by cultivating or planting."); *State v Brown*, 106 Or App 291, 297; 807 P2d 316 (1991) ("Each of the statutory provisions defining possession and manufacture of a controlled substance requires proof of an element that the other does not."); *State v Peck*, 143 Wis 2d 624, 645-646; 422 NW2d 160 (1988) ("Possession, however, is not an element of the offense of manufacturing a controlled substance.").