*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

PATRICK GERARD WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
November 17, 2022

No. 358668
Ottawa Circuit Court
LC No. 20-044151-FH

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for possession of methamphetamine, MCL 333.7403(2)(b)(*i*), and third-degree fleeing and eluding a police officer, MCL 257.602a(3)(a). We affirm.

## I. FACTS

This case arises from a high-speed motorcycle chase in which Ottawa County Sheriff's deputies pursued and later arrested defendant. On October 17, 2020, Deputies Nathan McDaid and McCauley O'Connor were on duty in Ottawa County in a marked police vehicle. Both deputies were in uniform. During their patrol, defendant and a passenger rode past them on a Harley-Davidson motorcycle driving 66 miles per hour (mph) in a 45-mph speed zone. Deputy McDaid turned on the patrol car's overhead emergency lights and followed defendant, observing that the motorcycle did not have a license plate.

After Deputy McDaid activated the patrol car's emergency lights, he saw defendant, who was not wearing a helmet, turn and look at the patrol car. Defendant slowed down temporarily, then sped away. When defendant failed to stop, the officers turned on the police siren and pursued defendant through a residential neighborhood where the speed limit was 25 mph, reaching a speed of 80 mph. After approximately one mile and two minutes of police pursuit, the chase ended when defendant crashed the motorcycle into the yard of a private residence. Defendant and his passenger were thrown from the motorcycle. Deputy McDaid testified that as he approached the crash scene, defendant stated "F*** you, this is your fault, you're not allowed to go faster than 100 miles per hour while pursuing." Later, defendant told an officer that he knew that the officers were following

-1-

him, and he had been "trying to get away" by accelerating to 100 mph because he believed that the officers were not allowed to pursue a suspect at that speed.

Deputy McDaid then searched defendant and did not find any incriminating evidence. Defendant's left leg was injured in the crash, and during the search defendant was leaning on his right side. Deputy McDaid reached his hand into defendant's right pants pocket and searched the pocket, but did not pull the pocket out, as was standard protocol, because he did not want to aggravate defendant's injury by forcing him to lean on his left leg. After the search, defendant was taken to the hospital where he changed into a hospital gown, and his clothes were placed in a secured hospital bag. The officers did not leave defendant or his clothing alone while at the hospital. As defendant was being released from the hospital, Deputy Adam VanDis searched defendant's clothes in the hospital bag and found suspected methamphetamine and two syringes in the right front pocket of defendant's pants. Deputy VanDis testified that defendant initially denied knowing about the drugs, but while changing back into his clothes told the officer that if there were drugs in his pocket, it would most likely be "meth." Defendant admitted that he used methamphetamine and had used the drug two days earlier. The lab report later confirmed that the substance found in defendant's right pants pocket was methamphetamine.

Defendant was charged with possession of methamphetamine and third-degree fleeing and eluding a police officer. At the close of the prosecution's case at trial, defense counsel moved for a directed verdict on both charges, arguing that the prosecution presented insufficient evidence to establish (1) the element of possession to support the possession of methamphetamine charge and (2) that defendant knew the police were pursuing him, as required to support the fleeing and eluding charge. The trial court denied defendant's motion for a directed verdict, and the jury returned a guilty verdict on both counts. Defendant was sentenced, as a second-offense habitual offender, MCL 769.10, to 28 to 180 months' imprisonment for the possession of methamphetamine conviction, and 28 to 90 months' imprisonment for the third-degree fleeing and eluding a police officer conviction. Defendant now appeals.

## II. DISCUSSION

Defendant contends that the trial court erred by denying his motion for a directed verdict on the charges of possession of methamphetamine and third-degree fleeing and eluding a police officer. We disagree.

At the close of the prosecution's case, a defendant may move for a directed verdict of acquittal. MCR 6.419(A); *People v Szalma*, 487 Mich 708, 720-721; 790 NW2d 662 (2010). The trial court is required to direct a verdict of acquittal if the evidence presented is not sufficient to support a conviction. MCR 6.419(A); *People v Lemmon*, 456 Mich 625, 633-634; 576 NW2d 129 (1998). We review de novo a trial court's decision on a motion for a directed verdict. *People v McKewen*, 326 Mich App 342, 347 n 1; 926 NW2d 888 (2018). In doing so, we review the evidence in a light most favorable to the prosecution "to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Schrauben*, 314 Mich App 181, 198; 886 NW2d 173 (2018). We "draw all reasonable inferences and make credibility choices in support of the jury verdict." *McKewen*, 326 Mich App at 347 n 1.

## A. POSSESSION OF METHAMPHETAMINE

Subject to several exceptions not relevant in this matter, MCL 333.7403(1) prohibits a person from "knowingly or intentionally possess[ing] a controlled substance." Under MCL 333.7214(c)(ii), methamphetamine is classified as a controlled substance. To convict a defendant of possession of methamphetamine under MCL 333.7403(2)(b), the prosecution must prove that the defendant knowingly or intentionally possessed methamphetamine. *People v Baham*, 321 Mich App 228, 247; 909 NW2d 836 (2017). To establish the element of possession, the prosecution must prove that the defendant had "dominion or right of control over the drug with knowledge of its presence and character." *Id.* (quotation marks and citation omitted). "Possession may be actual or constructive." *Id.* (quotation marks and citation omitted). The elements of a crime may be established by circumstantial evidence and reasonable inferences arising from that evidence. *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). Minimal circumstantial evidence may satisfy the intent element of a crime. *People v Smith*, 336 Mich App 297, 308; 970 NW2d 450 (2021).

In this case, defendant contends that the trial court erred by denying his motion for a directed verdict because there was insufficient evidence that he possessed the methamphetamine to support his conviction. Defendant argues that because no drugs were found in his pocket during the search at the scene, and because defendant did not have access to his clothes at the hospital, there was insufficient evidence that he possessed the methamphetamine found in his pants pocket when the pants were removed from the hospital bag.

We conclude that there was sufficient evidence for the trial court to submit the charge to the jury, and sufficient evidence to support the jury's verdict. The officers did not discover the evidence at the crash scene because the searching officer did not want to exacerbate defendant's injury by forcing defendant to lean on his injured left leg to facilitate a more thorough search of his right pants pocket. Deputies accompanied defendant to the hospital and defendant's clothes were secured in a hospital bag. When defendant was preparing to leave the hospital, Deputy VanDis discovered the methamphetamine in defendant's right pants pocket that had not been fully searched at the crash scene. Defendant informed the officer that he used methamphetamine two days earlier and that if drugs were in his pocket, "it would most likely be meth," confirming that defendant knew of the presence and character of the controlled substance found in his pants pocket. These facts, taken together, were sufficient to support the conclusion that defendant knowingly or intentionally possessed the drugs in his pants pocket. The trial court did not err by denying defendant's motion for a directed verdict on the possession of methamphetamine charge.

## B. THIRD-DEGREE FLEEING AND ELUDING A POLICE OFFICER

MCL 257.602a(1) provides, in relevant part:

> A driver of a motor vehicle who is given by . . . emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the motor vehicle . . . or otherwise attempting to flee or elude the officer.

Fleeing or eluding an officer is a third-degree offense if some portion of the violation took place where the speed limit was thirty-five miles per hour or less, or the defendant's conduct resulted in an accident or collision. MCL 257.602a(3)(a), (b). Specifically, the elements of third-degree fleeing and eluding are as follows, in relevant part:

> (1) the law enforcement officer must have been in uniform and performing his lawful duties and his vehicle must have been adequately identified as a law enforcement vehicle, (2) the defendant must have been driving a motor vehicle, (3) the officer, with his hand, voice, siren, or emergency lights must have ordered the defendant to stop, (4) the defendant must have been aware that he had been ordered to stop, (5) the defendant must have refused to obey the order by trying to flee from the officer or avoid being caught, which conduct could be evidenced by speeding up his vehicle or turning off the vehicle's lights among other things, and (6) some portion of the violation must have taken place in an area where the speed limit was thirty-five miles an hour or less, or the defendant's conduct must have resulted in an accident or collision . . . . [*People v Grayer*, 235 Mich App 737, 741; 599 NW2d 527 (1999), citing MCL 750.479a(3).[1]]

Defendant contends that there was insufficient evidence to support a finding that he knew the police were chasing him. Defendant argues the loud noise of his Harley-Davidson motorcycle prevented him from hearing the police siren, as evidenced by his passenger's statement to police that she did not hear the siren because of the noise of the motorcycle. Defendant also argues that although he ostensibly looked over his shoulder during the chase, there is no evidence that he acknowledged the officers behind him. Defendant also argues that when the motorcycle was recovered after the crash, the mirrors were facing upwards, indicating that the position of the mirrors made it impossible for him to see that he was being pursued.

We conclude that there was sufficient evidence to establish all elements of the crime of fleeing and eluding a police officer. Deputies McDaid and O'Connor were in uniform during the chase, were on duty, and were driving a marked police vehicle. Deputy McDaid signaled defendant to stop his motorcycle by using the police cruiser's emergency lights and the siren. Deputies McDaid and O'Connor testified that defendant looked back over his shoulder toward the officers after Deputy McDaid turned on the police vehicle's overhead emergency lights. Defendant then turned down a residential street, slowed down, and then suddenly accelerated to a high speed. The pursuit continued for approximately two minutes and one mile. The chase took place in part in an area where the speed limit was 25 mph and the chase resulted in an accident. After defendant crashed his motorcycle, he told officers at the scene, "F*** you, this is your fault, you're not allowed to go faster than 100 miles per hour while pursuing." Defendant later told an officer that he knew the officers were following him and he was trying to get away by driving over 100 mph because he believed the officers were prohibited from pursuing at that speed. This evidence was sufficient for a jury to find that defendant knew the police were pursuing him. The

---

[1] MCL 257.602a is substantively identical to that of MCL 750.479a.

prosecution established all elements of third-degree fleeing and eluding, and the trial court did not err by denying defendant's motion for a directed verdict.

Affirmed.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola