*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HAROLD ARTHUR MOORE III,

        Defendant-Appellant.

UNPUBLISHED
August 29, 2024

No. 365306
Montcalm Circuit Court
LC No. 2022-029331-FH

Before: SWARTZLE, P.J., and K.F. KELLY and YOUNG, JJ.

PER CURIAM.

Harold Arthur Moore III was convicted by a jury of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), and fourth-degree fleeing and eluding, MCL 750.479a(1) and (2), as a fourth-offense habitual offender, MCL 769.12. The trial court sentenced Mr. Moore to serve a minimum of 30 months in prison for each conviction, with the terms to be served concurrently. Mr. Moore appeals as of right, asserting that the trial court erred by failing to admit into evidence an unavailable witness's statements under MRE 804(b)(3) and by determining that recovered drug paraphernalia was not relevant under MRE 401.[1] For the reasons set forth in this opinion, we reverse Mr. Moore's convictions and remand this matter to the trial court.

## I. RELEVANT BACKGROUND FACTS

### A. FACTS ESTABLISHED AT TRIAL

On April 7, 2022, at about 1:00 a.m., Deputy Joshua Lyster of the Montcalm County Sheriff's Department observed Mr. Moore operating a vehicle with a nonfunctioning license plate light, and failing to use his turn signal. Deputy Lyster attempted to effectuate a traffic stop. Deputy Lyster first activated his emergency lights. Mr. Moore continued driving. Deputy Lyster then

---

[1] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

activated his siren, and shortly thereafter Mr. Moore pulled over. Deputy Lyster ordered Mr. Moore to exit the vehicle, and Deputy Lyster observed some motion inside the vehicle through the tinted windows; eventually, Michelle Hawley exited the passenger side of the vehicle. Mr. Moore subsequently exited the driver's side of the vehicle. Mr. Moore and Ms. Hawley were secured in handcuffs, and other officers arrived to assist.

While in custody, Mr. Moore admitted that he knew that the deputy was behind him with his lights and siren activated, but he did not stop because he was not certain if he was being pulled over and wanted to avoid a tow bill. Mr. Moore was driving about 30 miles per hour, on a country road without a defined shoulder when he eventually pulled over.

A white baggy appearing to contain either methamphetamine or cocaine was discovered near the driver's side front tire of Mr. Moore's vehicle, three to four feet away from where Mr. Moore had been standing. When confronted with this discovery, Mr. Moore told Deputy Lyster that the deputy's lights and sirens must have scared someone on the roadway, which then caused them to drop the baggy. That baggy was found to contain 1.04 grams of methamphetamine. Additionally, a black backpack was found in the backseat, which Mr. Moore indicated did not belong to him.

Despite his request for a drug test, Mr. Moore's blood was not tested because he did not appear intoxicated and charges were not being sought for an operating-while-intoxicated offense. The baggy of methamphetamine was not tested for DNA or fingerprints. There was no camera footage available of the stop because Deputy Lyster's patrol vehicle cameras were non-operational.

At a subsequent traffic stop on or about June 8, 2022, Mr. Moore told deputies that he wanted to talk about what had happened during the traffic stop on April 7. He then asserted the black backpack belonged to Hawley, and he again asserted the baggy of methamphetamine did not belong to him. Mr. Moore then asserted that he witnessed Hawley throw the baggy across the vehicle as he was pulling over. Mr. Moore had not given this information to the responding officers because he did not want to be a "snitch."

Mr. Moore testified on his own behalf at trial. Mr. Moore stated that as he began pulling over, Hawley began searching through her bags, rolled down the window, and threw something out of the vehicle across the hood while the vehicle was still moving forward. Mr. Moore denied knowing that there were any drugs in the car, and he denied having any drugs on his person.

## B. POLICE INCIDENT REPORT

Deputy Lyster authored the incident report in this matter. Germane to the matter before us, Deputy Lyster wrote the following:

> I asked HAWLEY if she threw anything out of the car and she said that she did not. She also said that there were no narcotics in the car.

* * *

Also located in the center of the back seat, right behind the center console, was a black backpack. This backpack was in the wingspan of both vehicle occupants.

Inside of this black backpack was [a] black glasses case with the white print "CONVERSE" on the top. Inside of this glasses case was a glass pipe, which based on my training and experience is used for the smoking of methamphetamine. This pipe had a heavy white and burned residue inside of it.

Also inside of the black backpack was a black fabric pouch with white dots and a zipper. Inside of the pouch was a contacts case. In the left contact side, green top with "L," was a small amount of white powder residue. Inside of the pouch was also a clear plastic container, half of a 5 dollar bill, a ziplock style plastic/cellophane bag with white residue, a short red straw with white powder residue inside, and a blue Paypal cash debit card bearing the name "[JG]." The red straw appeared to be used for the snorting of cocaine.

Inside of the black backpack was also a large blue folding mirror with lots of white powder residue on the inside. I know that mirrors are commonly used to snort cocaine off of[,] based on my training and experience.

Other items inside of the black backpack include a hair straightener, part of a hair brush, pouches containing acrylic nails and tools to apply them, and pouches containing makeup. [Inside] pockets there were what appeared to be women's sunglasses, and a pair of work gloves.

On the front passenger's side floorboard was a green purse. Inside of a zippered side pocket was a small blue straw with flared ends. This straw had white powder residue inside of it. This straw appeared to be used for the snorting of cocaine.

 . . . I recontacted HAWLEY who was in the rear driver[']s side seat of my patrol vehicle. I asked when was the last time she used meth, heroin, or cocaine. HAWLEY stated that she used cocaine a few days ago. I asked HAWLEY if cocaine was her drug of choice and she said that it was. I asked how HAWLEY used cocaine and she said she snorts it. I asked HAWLEY if the green purse in the passengers side was hers and she said it was. I asked HAWLEY about the black bag in the back seat and she said that it was not hers. HAWLEY did note that she recently had some items stolen by MOORE'S friends and that some of the items in the bag may be hers, but the bag was not hers.

\* \* \*

HAWLEY mumbled to herself during transport that "this is all my fault, I should've swallowed ___" with the word after ["]swallowed["] being indiscernible.

Hawley's statements to the deputy were excluded at trial, as was the evidence of her drug paraphernalia. Mr. Moore was convicted and sentenced, as stated earlier, and he now appeals.

## II. STANDARDS OF REVIEW

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). See also *People v Barrera*, 451 Mich 261, 268; 547 NW2d 280 (1996). "An abuse of discretion occurs when a decision falls outside the range of reasonable and principled outcomes, and a trial court necessarily abuses its discretion when it makes an error of law." *People v Zitka*, 325 Mich App 38, 43-44; 922 NW2d 696 (2018) (quotation marks, citations, and alterations omitted). "[A]ppellate review necessarily requires a review of the importance of the statement to the defendant's theory of defense in determining whether the trial court abused its discretion by excluding the evidence." *Barrera*, 451 Mich at 269. A trial court's findings of fact are reviewed for clear error. *Id*.

> Under the harmless-error rule set forth in MCL 769.26, it is presumed that preserved, nonconstitutional error—such as evidentiary error—is harmless, and to overcome that presumption the appellant bears the burden of demonstrating, on the strength of the entire record, that it is more probable than not that the error was outcome determinative. [*People v Propp*, 340 Mich App 652, 661-662; 987 NW2d 888 (2022).]

## III. MRE 804(b)(3)

On appeal, Mr. Moore first argues that Hawley was unavailable at trial, and her statements as memorialized in Deputy Lyster's incident report satisfy MRE 804(b)(3); therefore, the trial court abused its discretion by failing to admit them into evidence at trial. We agree.

## A. PERTINENT FACTS

Before trial, both the prosecution and Mr. Moore listed Hawley as a potential witness, but she was unable to be located despite reasonable efforts. Mr. Moore requested the trial court admit Hawley's statements under MRE 804(b)(3), as memorialized in Deputy Lyster's incident report. However, the prosecution asserted that, although drug paraphernalia were found in the car, there was not even enough cocaine residue to test.[2] Mr. Moore argued that the recovered methamphetamine could have belonged to Hawley, given her admitted drug use and the untested powder on the items recovered from her purse.

The trial court found that Hawley's statements could have been made against her penal interests if cocaine residue had been found on any of the paraphernalia recovered from her

---

[2] Because there was not enough residue to test, the prosecution had no basis to assert that it was "cocaine residue" as opposed to methamphetamine residue, or any other substance.

possessions. Regardless, Hawley's statements concerned cocaine, and Mr. Moore in this matter was charged with possession of methamphetamine. The trial court concluded that Hawley likely believed that her items contained controlled substances, but the substance was cocaine; therefore, these statements were not made against her penal interests as it related to methamphetamine. Finally, the trial court found that, regardless, Hawley's statements could not be evaluated for trustworthiness on the basis of the information presented and that they were not crucial for Mr. Moore's defense. Specifically, the trial court highlighted that Mr. Moore could still argue that the possession of the recovered methamphetamine in this matter was joint or belonged to Hawley, regardless of her statements' admission into evidence.

## B. LEGAL STANDARDS

Hearsay is an out-of-court statement offered for the truth of the matter asserted, which is not admissible unless an exception applies. MRE 801(c) and MRE 802. One such exception allows for the admission of hearsay if: (1) the declarant is unavailable; (2) "a reasonable person in the declarant's position would not have made the statement unless believing it to be true"; (3) the statement, when made, "tend[ed] to expose the declarant to criminal liability"; and (4) the "corroborating circumstances clearly indicate the trustworthiness of the statement." MRE 804(b)(3).

> In short, [the test for determining] whether a declarant's statement was sufficiently against penal interest is whether the statement would be probative of an element of a crime in a trial against the declarant, and whether a reasonable person in the declarant's position would have realized the statement's incriminating element. If so, then the statement tended to subject the declarant to criminal liability. [*Barrera*, 451 Mich at 272.]

The trial court is to apply the totality-of-the-circumstances test when evaluating the trustworthiness of a declarant's statements, and must consider "the circumstances surrounding the declarant making the statement, and all other relevant facts in the case." *Id*. at 275-276.

## C. APPLICATION

In this matter, Hawley's admissions include the following: (1) that the green purse—which contained a small blue straw with flared ends and had a white powder residue inside of it— belonged to her; (2) that some of the items in the black backpack—which contained a glass pipe with white residue, other items with white residue, and other women's beauty items—might be hers; (3) that her preferred drug of choice was cocaine; (4) out of "meth, heroin, or cocaine," she admitted to using cocaine a few days before the incident; and (5) she made the statement that "this is all my fault, I should've swallowed ___," with the word after "swallowed" being indiscernible. It is undisputed that Hawley's statements constitute hearsay. Instead, the question is whether the exception in MRE 804(b)(3) applies.

It is also undisputed that Hawley was unavailable to testify at trial within the meaning of MRE 804. Therefore, the first requirement is satisfied.

Regarding whether a reasonable person in Hawley's position would have made the statement, and believed it to be true, "[t]his [requirement] flows from the underlying rationale of

the exception: the statement's reliability flows from the postulate that a reasonable person will not incriminate himself by admitting a damaging fact unless he believes that fact to be true." *Barrera*, 451 Mich at 271-272. "If the declarant faces no reasonable threat of punishment, the justification underlying the exception would not be met." *Id*. at 272. Regarding whether Hawley's statements were made against her penal interests, "[t]he proffered statement need only be 'a brick in the wall' of proving the declarant's guilt." *Id*. at 271. "[I]t is well established that a particular piece of evidence need not by itself prove the declarant guilty." *Id*. at 270-271. There is no requirement that the declarant's statements be made against the penal interests of the declarant for the same crimes for which the defendant is on trial; they merely must be inculpatory of the declarant, subjecting them to criminal liability.

In this matter, Hawley made these admissions while secured in the back of a police cruiser, and she had no way of knowing whether the residue on the assorted drug paraphernalia was sufficient for testing. For example, had the residue tested positive for methamphetamine, any amount would have been sufficient to also charge Hawley with possession of methamphetamine. MCL 333.7401(2)(b)(*i*) and MCL 333.7214(c)(*ii*). In this case, the declarant—by admitting that the purse belonged to her and that some of the contents of the backpack also were hers—faced a reasonable threat of punishment because of the drug paraphernalia and residue discovered. This, combined with her admission that she used narcotics, that it was all her fault, and that she should have swallowed something, all constitute "brick[s] in the wall" proving her guilt. *Barrera*, 451 Mich at 271.

The trial court erred as a matter of law when it narrowly interpreted the *Barrera* test to require a statement against penal interest be made with respect to the exact charge at trial. It was erroneous to conclude that because some of Hawley's statements concerned cocaine and Moore was charged with possession of methamphetamine, they were not against Hawley's penal interest. They could "implicate the declarant in a crime," and thus they were against her penal interest. *Barrera*, 451 Mich at 271.

The statements made against the declarant's penal interest must also be trustworthy, although it is not required "that the statements themselves be clearly corroborated." *Id*. at 272 (quotation marks and citation omitted).

> The presence of the following factors would favor admission of such a statement: whether the statement was (1) voluntarily given, (2) made contemporaneously with the events referenced, (3) made to family, friends, colleagues, or confederates—that is, to someone to whom the declarant would likely speak the truth, and (4) uttered spontaneously at the initiation of the declarant and without prompting or inquiry by the listener.

> On the other hand, the presence of the following factors would favor a finding of inadmissibility: whether the statement (1) was made to law enforcement officers or at the prompting or inquiry of the listener, (2) minimizes the role or responsibility of the declarant or shifts blame to the accomplice, (3) was made to avenge the declarant or to curry favor, and (4) whether the declarant had a motive to lie or distort the truth. [*Id*. at 274-275, quoting *People v Poole*, 444 Mich 151, 165; 506 NW2d 505 (1993) (quotation marks omitted).]

-6-

Regarding custodial statements, the trial court "should first consider the relationship between the confessing party and the exculpated party and . . . [whether] it was likely that the confessor was fabricating his story for the benefit of a friend." *Barrera*, 451 Mich at 275 (quotation marks and citation omitted; alterations in original). The second factor is whether the declarant made the statement voluntarily after being advised of his or her *Miranda*[3] rights, and the third factor is whether the statement was made to curry favor with the authorities. *Id*.

In this matter, the trial court found that Hawley's statements could not be evaluated for trustworthiness on the basis of the information presented and that they were not crucial for Mr. Moore's defense. The trial court clearly erred by making a finding of fact that nothing presented to the trial court allowed it to make a trustworthiness determination, and the trial court made a mistake of law by failing to engage in the totality-of-the-circumstances analysis.

Regarding the factors favoring admissibility, while Hawley was speaking to or in the presence of a police officer and not a friend or family, all of Hawley's statements were: (1) voluntarily given; (2) after she was advised of her *Miranda* rights; (3) not made to curry favor with law enforcement; and (4) made contemporaneously with the events. Hawley's statements asserting that this was her fault, and that she should have swallowed something, were spontaneously given, which favors a finding of trustworthiness.

Regarding the factors disfavoring a finding of trustworthiness, Hawley's statements regarding her purse, possessions in the backpack, preference for cocaine, and recent cocaine usage were made at the prompting of law enforcement.

Taken in their totality, Hawley's hearsay statements satisfy the trustworthiness requirements of MRE 804(b)(3).

### D. ABUSE OF DISCRETION AND HARMLESS-ERROR ANALYSIS

Hawley's hearsay statements satisfy the requirements of MRE 804(b)(3). Through the trial court's mistakes of law and mistakes of fact, the trial court necessarily abused its discretion by not admitting into evidence Hawley's hearsay statements, under MRE 804(b)(3). See *Zitka*, 325 Mich App at 43-44. As stated:

> Under the harmless-error rule set forth in MCL 769.26, it is presumed that preserved, nonconstitutional error—such as evidentiary error—is harmless, and to overcome that presumption the appellant bears the burden of demonstrating, on the strength of the entire record, that it is more probable than not that the error was outcome determinative. [*Propp*, 340 Mich App at 661-662.]

Mr. Moore does not present much in the way to overcome the presumption that the absence of this evidence was harmless. But at least part of this is attributable to the very limited record for this case. The only evidence used to establish Mr. Moore's guilt for possession of methamphetamine

---

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

was that a baggy of methamphetamine was discovered on the roadway, about four feet from where Mr. Moore exited the vehicle. The baggy was not examined for fingerprints or tested for DNA. Deputy Lyster observed movement inside the vehicle when he effectuated the traffic stop, but he did not see anything thrown from the vehicle. Deputy Lyster's patrol vehicle cameras were nonoperational. Mr. Moore was not tested for the presence of methamphetamine in his system. No other drug-related evidence was discovered on Mr. Moore's person. At a subsequent traffic stop, Mr. Moore asserted that the black backpack belonged to Hawley, and again asserted that the baggy of methamphetamine did not belong to him. Mr. Moore also asserted at that traffic stop that he witnessed Hawley throw the baggy across the vehicle.

Conversely, Hawley was discovered to possess assorted drug paraphernalia in her green purse, and a black backpack, which Deputy Lyster testified also contained numerous "women's items," further establishing that they belonged to Hawley. Had the jury been presented with Hawley's hearsay admissions of cocaine use and ownership of the green purse and some items in the black backpack, it is more probable than not that the trial court's error was outcome-determinative. These statements would have offered the jury circumstantial evidence of Hawley's ongoing drug usage, and would have called into question whether Mr. Moore possessed the methamphetamine or Hawley did. This evidence would have had a two-fold effect on Mr. Moore's case—(1) it would have corroborated his own testimony that he had no knowledge of the drugs in his vehicle and (2) it would have undermined the prosecutor's case-in-chief, providing a logically sound reason for the discovery of methamphetamine near the vehicle, and thus presenting a reasonable doubt. As the prosecutor argued in closing, "it's a matter of who you believe," and this was evidence that supported the jurors believing Mr. Moore.

Thus, "on the strength of the entire record . . . it is more probable than not that the error was outcome determinative." *Propp*, 340 Mich App at 661-662. For this reason, Mr. Moore is entitled to a new trial.

IV. MRE 401

Although we have already concluded Mr. Moore is entitled to a new trial, we separately address his argument that the trial court erred by finding that the recovered drug paraphernalia was irrelevant under MRE 401. We agree.

In dispute are the drug paraphernalia that Deputy Lyster discovered in Hawley's green purse and the black backpack found in the backseat area of the vehicle. The prosecution objected to the admission into evidence, through Deputy Lyster's testimony, any reference to these drug paraphernalia. The prosecution's objection was conducted during a sidebar bench conference, and later memorialized at the conclusion of the proofs at trial. The trial court concluded that the evidence was not relevant.

Relevant evidence is admissible, MRE 402, unless otherwise provided by law or rule, and evidence is relevant if: (1) it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

without the evidence." MRE 401.[4] "Any tendency to prove such a fact in issue constitutes sufficient probative value for purposes of relevancy." *People v Starr*, 457 Mich 490, 497-498; 577 NW2d 673 (1998). "Under this broad definition, evidence is admissible if it is helpful in throwing light on any material point." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001).

The elements of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), are "that the defendant knowingly or intentionally possessed methamphetamine," which "requires a showing of dominion or right of control over the drug with knowledge of its presence and character." *People v Baham*, 321 Mich App 228, 247; 909 NW2d 836 (2017) (quotation marks and citations omitted; alterations incorporated). "Possession may be actual or constructive, joint or exclusive." *Id*.

Hawley's possession of drug paraphernalia, with white residue on them, is directly relevant to the element of possession of methamphetamine. At a minimum, this evidence would encourage a finder of fact to consider that possession of the methamphetamine at issue was jointly held between Mr. Moore and Hawley. Because the paraphernalia would make this material point more probable, it satisfies the relevancy standard in MRE 401 and 402. Through the trial court's mistake of law, the trial court necessarily abused its discretion by not admitting Hawley's drug paraphernalia into evidence under MRE 401 and MRE 402.

Because of the scant evidence presented by the prosecution in this matter, Mr. Moore can establish that the absence of the drug paraphernalia was outcome-determinative and the trial court's abuse of discretion was not harmless, see *Propp*, 340 Mich App at 661-662. For this reason, too, reversal is warranted.

## V. REMEDY

Mr. Moore requests this Court vacate both convictions and sentences and remand for a new trial "or any other relief deemed appropriate by this Court." This case involves two convictions—one for possessing methamphetamine and the other for fleeing and eluding. This Court may set aside the verdict of the jury either wholly or in part. MCL 213.124. Likewise, MCR 2.611(A)(1) states that a new trial may be granted on all or some of the issues. The wrongfully-withheld evidence meaningfully undermines the possession conviction. However, as mentioned above, the withheld evidence would affect the believability of Mr. Moore's testimony *in full*, and that includes his explanation that he did not in fact flee or elude the police and pulled over in a place of safety as soon as feasible. *Cf. People v Grayer*, 252 Mich App 349, 356; 651 NW2d 818 (2002). In the interest of justice, a new trial on both convictions is proper.

---

[4] The trial court found that the drug paraphernalia was not relevant; the trial court did not find that the evidence was relevant, but otherwise inadmissible, under MRE 403.

## VI. CONCLUSION

For the reasons stated, we reverse Mr. Moore's convictions and remand to the trial court. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Adrienne N. Young