*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JACKIE ELWIN TODD,

Defendant-Appellant.

UNPUBLISHED
February 11, 2025
1:21 PM

No. 367677
Wexford Circuit Court
LC No. 2023-013561-FH

Before: BORRELLO, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Defendant, Jackie Elwin Todd, appeals as of right his jury trial conviction of possession of methamphetamine, MCL 333.7403(2)(b)(*i*). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 36 to 360 months' imprisonment. We affirm.

## I. BACKGROUND

On July 23, 2022, Michigan State Police Trooper William Coon received a dispatch call for a woman acting strangely near a church. Upon arrival, Trooper Coon found the woman, Jessica Johnson, who was intoxicated and had been spray-painting the church. He found a needle near her feet. From her behavior, Trooper Coon inferred that she had been using narcotics, and he arrested her for methamphetamine possession. Johnson told Trooper Coon that she had been using methamphetamine with defendant the previous night and that there would be methamphetamine at defendant's house.

Police officers obtained a search warrant for defendant's residence, a garage. They entered the garage, found defendant alone, and arrested him. Inside the garage, police officers saw a large amount of drug paraphernalia, including needles, a full sharps container, and spoons. The police also found a small baggie of methamphetamine on a table near defendant's couch.

Trooper Coon interviewed defendant after defendant waived his *Miranda* rights. Defendant told Trooper Coon that Johnson had been at the residence the night before and that they used methamphetamine together. Defendant told him that the police would find methamphetamine on his coffee table. Defendant also identified the person from whom he purchased the

-1-

methamphetamine. The video of defendant's arrest and police interview was admitted into evidence.

Johnson testified inconsistently at defendant's trial. Initially, she testified that, before she went to the church, she used methamphetamine that she purchased from defendant in his garage. She later testified that she had been using methamphetamine by herself at defendant's residence and that she left the residence because defendant's son asked her to leave. She further testified that she left methamphetamine at the house, but that she did not leave behind any needles or spoons. Later in her testimony, Johnson testified that she purchased the methamphetamine from "Al Green." However, she testified that defendant was with her when she used the methamphetamine and that defendant used the methamphetamine with her. Trooper Coon testified that he had not heard of an Al Green or defendant's son before the trial.

Defendant testified on his own behalf. He testified that he had not lived at the residence for at least a week before the day of his arrest. According to defendant, he went to the residence because his son had told him Johnson was there, and defendant wanted to clean up her mess. He testified that the methamphetamine was Johnson's. Defendant also testified that he could not use methamphetamine because he was prescribed Suboxone, and if he used the two drugs together, it would make him sick or possibly kill him. He denied using methamphetamine with Johnson, and he testified that, while he had purchased methamphetamine from the person he told police about, he had only done so two years ago. In contrast, the video of the police interview shows that defendant told police he purchased the methamphetamine the night before.

The jury convicted defendant as previously described. This appeal followed.

## II. JURY INSTRUCTIONS

Defendant argues that he is entitled to reversal of his conviction because the trial court failed to instruct the jury on the offense of methamphetamine use as a lesser included offense. We disagree.

Claims of instructional error involving a question of law are reviewed de novo. *People v Jones*, 497 Mich 155, 161; 860 NW2d 112 (2014). "However, a circuit court's decision as to whether a requested lesser-included-offense instruction is applicable under the facts of a particular case will only be reversed upon a finding of an abuse of discretion." *Id*. "An abuse of discretion occurs when the circuit court chooses an outcome that falls outside the range of principled outcomes." *Id*.

MCL 768.32(1) permits a jury to find a defendant not guilty of a charged offense and to find the defendant guilty "of a degree of that offense inferior to that charged in the indictment." In other words, it permits a jury to consider lesser included offenses and convict on a lesser included offense in place of the charged offense. An offense is a lesser included offense if all of its elements are included as elements of the greater offense. *People v Heft*, 299 Mich App 69, 74; 829 NW2d 266 (2012). "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). By contrast, a cognate offense is one that

shares common elements with, and is in the same class or category as, the greater offense, but has additional elements that are not elements of the greater offense. *People v Perry*, 460 Mich 55, 61; 594 NW2d 477 (1999). Unlike lesser included offenses, MCL 768.32(1) does not permit the jury to consider cognate offenses. See *Cornell*, 466 Mich at 354-355.[1]

Defendant was charged with possession of methamphetamine, MCL 333.7403(2)(b)(*i*). The elements of this offense are that the defendant knowingly or intentionally possessed methamphetamine. *People v Baham*, 321 Mich App 228, 247; 909 NW2d 836 (2017). At trial, defendant requested an instruction for use of methamphetamine. The trial court denied this request. The elements of use of methamphetamine are that the defendant used methamphetamine without statutory authorization. MCL 333.7404(2)(b). Methamphetamine use therefore includes an element that is not an element of methamphetamine possession: that the defendant used methamphetamine. This makes methamphetamine use a cognate offense, and not a lesser included offense. It therefore would have been impermissible under MCL 768.32(1) for the jury to convict defendant of methamphetamine use and not methamphetamine possession. For this reason, the trial court did not err by denying defendant's request for a jury instruction on methamphetamine use.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that defendant possessed the methamphetamine. We disagree.

The question of whether there is sufficient evidence to support a conviction is reviewed de novo. *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020). "Due process requires the prosecutor to introduce evidence sufficient for a trier of fact to find the defendant guilty beyond a reasonable doubt." *People v Jarrell*, 344 Mich App 464, 480; 1 NW3d 359 (2022). When there is a challenge to the sufficiency of the evidence, this Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (quotation marks, citation, and emphasis omitted). This Court is "required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks, citation, and emphasis omitted). Circumstantial evidence and reasonable inferences from the evidence are sufficient to prove the elements of a crime. *Id*. "The jury [is] free to accept or reject the theory of either party in light of the evidence presented at trial, and this Court will not interfere with the jury's role of determining issues of weight and

---

[1] In support of his argument that the trial court's failure to give a requested instruction on use of methamphetamine constitutes reversible error, defendant relies on *People v Jones*, 395 Mich 379; 236 NW2d 461 (1975), *People v Chamblis*, 395 Mich 408; 236 NW2d 473 (1975), and their progeny. However, in reaching its decision in *Cornell*, our Supreme Court specifically overruled these cases "[t]o the extent that [they] and their progeny conflict with [its] holding" that instructions on lesser cognate offenses are prohibited. *Cornell*, 466 Mich at 358. Defendant argues that both *Jones* and *Chamblis* were cited authoritatively in *People v Haynie*, 505 Mich 1096; 943 NW2d 383 (2020), and *People v Wafer*, 509 Mich 31; 983 NW2d 315 (2022); however, these cases do not revive the portions of *Jones* and *Chamblis* that were overruled by *Cornell*.

credibility." *People v Ventour*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 363922); slip op. at 7.

As discussed, to convict a defendant under MCL 333.7403(2)(b)(*i*) the prosecution must prove beyond a reasonable doubt that the defendant knowingly or intentionally possessed methamphetamine. *Baham*, 321 Mich App at 247. Actual physical possession of a controlled substance is not required for a defendant to be found guilty of the offense. *People v Norfleet*, 317 Mich App 649, 659; 897 NW2d 195 (2016). To prove that a defendant possessed a controlled substance, the prosecution must show that the defendant had "dominion or right of control over the drug with knowledge of its presence and character." *Baham*, 321 Mich App at 247 (quotation marks and citation omitted). More than one person can jointly possess a controlled substance. *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). However, "a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession." *Id.*

Defendant disputes that he possessed the methamphetamine, arguing that Johnson's testimony was evidence that he did not have dominion or control over the methamphetamine. Johnson did provide testimony that she did not purchase the methamphetamine from defendant, that she was alone when she used the methamphetamine, and that she left the methamphetamine in defendant's garage. However, Johnson also testified that she obtained the methamphetamine from defendant and that she used it with him. Overall, her testimony was self-contradictory and inconsistent as to whether defendant had dominion or control over the methamphetamine. The decision as to which parts of her testimony to find credible was therefore a decision for the jury. See *Ventour*, ___ Mich App at ___; slip op at 7.

Additionally, there was other evidence that supported a conclusion that defendant possessed the methamphetamine. Defendant was present in his residence when the police came to search it. The police found a large amount of drug paraphernalia in defendant's residence, and defendant admitted to police that he purchased the methamphetamine and accurately told them where to find it. Defendant did deny his statements to police in his trial testimony. Like with Johnson's testimony, the jury would have had to determine if defendant's denials were credible. See *id*.

Overall, there was sufficient evidence for a jury to find defendant guilty of methamphetamine possession: the police found defendant in the residence with the methamphetamine, defendant admitted to police that the methamphetamine was his, and Johnson told police and testified that she got the methamphetamine from defendant. Despite contradictory testimony, when viewing the evidence in the light most favorable to the prosecution, there was enough evidence from which a reasonable fact-finder could conclude that defendant possessed the methamphetamine.

## IV. GREAT WEIGHT OF THE EVIDENCE

Defendant argues that his conviction was against the great weight of the evidence. We disagree.

Defendant failed to preserve his argument that the jury's verdict was against the great weight of the evidence because defendant did not move for a new trial before filing this appeal. See *People v Lopez*, 305 Mich App 686, 695; 854 NW2d 205 (2014). "Unpreserved challenges to the great weight of the evidence are reviewed for plain error affecting the defendant's substantial rights." *Id*. As explained by our Supreme Court:

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. [*People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).]

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018) (quotation marks and citation omitted). By itself, conflicting testimony is not sufficient to establish that the verdict was against the great weight of the evidence, even if the testimony was impeached. *Id*. The conflicting testimony must be impeached to the point of losing all probative value or be physically impossible for the court to find the verdict to be against the great weight of the evidence. *Id*. Ultimately, it is the role of the jury, not the court, to determine facts and witness credibility. *Id*.

As previously explained, the prosecution presented sufficient evidence at trial from which a reasonable fact-finder could find beyond a reasonable doubt that defendant was guilty of possession of methamphetamine. The prosecution presented a version of events in which police found defendant in the residence with the methamphetamine, defendant admitted to police that the methamphetamine was his, and Johnson told police and testified that she got the methamphetamine from defendant. Defendant's theory of the case was that the methamphetamine found in the garage was possessed solely by Johnson and he returned to the garage after she left to clean up after her.

The prosecution pointed out that Johnson testified inconsistently at trial. Johnson testified that she obtained methamphetamine from defendant, then changed her testimony to say she obtained it from a man named "Al Green." She testified that she used methamphetamine alone and left it at the garage, but also that she used it with defendant. Regardless of the contradictions in Johnson's testimony, it was corroborated by the presence of methamphetamine and her identification card in defendant's residence. It therefore was not impeached so heavily as to be completely unbelievable or physically impossible.

Likewise, defendant testified he only arrived 15 minutes after Johnson to clean up after her and that he could not use methamphetamine because of his Suboxone prescription. But the police found not only methamphetamine, but used syringes. Defendant also admitted to police that he purchased the methamphetamine and used it with Johnson. The jury had the task of determining which witnesses and what parts of the testimony were credible, and the task of weighing the evidence. See *id*. While there was conflicting testimony, it was not so contradictory as to lose its probative value altogether. The jury's finding that defendant possessed methamphetamine was therefore not against the great weight of the evidence.

## V. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecution committed misconduct by relying on portions of the video of his interview that were not admitted into evidence and by implying that defendant and Johnson lied in their testimony. We disagree.

A defendant preserves an issue of prosecutorial misconduct by contemporaneously objecting to the purported misconduct and requesting a curative instruction. *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021). Because defendant did not do so for either claim of prosecutorial misconduct, this issue is unpreserved. Unpreserved claims of prosecutorial misconduct are reviewed for plain error. *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020).

The prosecution in a criminal case has a duty not to engage in improper methods to convict a defendant. *Berger v United States*, 295 US 78, 88; 55 S Ct 629; 79 L Ed 1314 (1935). Accordingly, "[t]he test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). "This Court reviews claims of prosecutorial error case by case, reviewing the record as a whole and considering the prosecution's comments in their proper context." *People v Wisniewski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 361978); slip op at 13. "This Court also must review the prosecution's comments in light of the arguments made by defense counsel and the relationship they bear to the evidence admitted at trial." *Id.* (quotation marks and citations omitted).

"While the prosecution is precluded from arguing facts not in evidence or mischaracterizing the evidence presented, the prosecution is free to argue all reasonable inferences that arise from the evidence." *Id.* This includes whether witnesses are credible or not. See *People v Dobek*, 274 Mich App 58, 67; 732 NW2d 546 (2007); *Isrow*, 339 Mich App at 529-530. A prosecutor is "permitted to argue from the facts that defendant or defendant's witnesses were unworthy of belief." *Dobek*, 274 Mich App at 67.

Defendant challenges several portions of the prosecution's closing argument. Defendant first contends that the prosecution argued facts not in evidence because the prosecution only played portions of the video of defendant's interview, but argued that the full video did not support defendant's testimony. However, the entire video was admitted into evidence. Defendant had the ability to play additional clips from the video. The trial court also instructed the jurors that they could review the video if they wished. Since the video was admitted into evidence, and available in full to defendant and the jury, the prosecution did not argue facts not in evidence. Defendant does not otherwise contend that the prosecution mischaracterized the evidence contained in the video.

Defendant also contends that the prosecution improperly implied that he and Johnson lied in their testimony and improperly argued that defendant was obligated to tell the police more than he had. Defendant highlights the following portion of the closing argument:

> Trooper Coon interviewed the Defendant and the Defendant acknowledged watching the whole video. I only played portions of it, but the video does not

support the testimony that Mr. Todd gave today. He never mentioned arriving just fifteen minutes before the police. He never mentioned Michael. He never mentioned that Jessica brought the meth to the house or the building. He never mentioned anyone else either brought it there. He never mentioned Michael. He never mentioned having a Suboxone subscription until today.

Contrary to defendant's assertion, this is not an argument that defendant was obligated to say more to the police than he did. Rather, the prosecution was contrasting defendant's in-court testimony with defendant's statements to the police. Similarly, the prosecution argued that portions of Johnson's testimony were not credible because it contradicted itself and what she told Trooper Coon during her arrest. The defense strategy at trial was that defendant did not possess methamphetamine and the methamphetamine found in his residence was Johnson's. In context, the prosecution used evidence in the record to highlight inconsistencies between defendant's and Johnson's testimony and the statements they made to police the day of their arrest. This did not suggest that the prosecution had personal knowledge that a witness was not credible. The prosecution was permitted to argue from the facts that defendant's and Johnson's testimony was unworthy of belief. See *id*. Accordingly, defendant has not shown plain error or that he was denied a fair and impartial trial.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective for failing to move for a directed verdict at the close of the prosecution's evidence, for failing to object to the prosecutorial misconduct in the prosecution's closing arguments, and for failing to poll the jury following the verdict. We disagree.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020) (quotation marks and citation omitted). This Court reviews findings of fact for clear error. *Id*. Clear error is present when this Court "is left with a definite and firm conviction that the trial court made a mistake." *Id*. at 227-228 (quotation marks and citation omitted). This Court reviews constitutional determinations de novo. *Id*. at 227. Because no *Ginther*[2] hearing was held, this Court's review of the ineffective-assistance claim is limited to the existing record. *Id*.

The United States Constitution and the Michigan Constitution both entitle a criminal defendant to the assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. This counsel must be effective to satisfy this constitutional requirement. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Counsel is ineffective if "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that that outcome would have been different." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023) (quotation marks and citation omitted). There is a reasonable probability that the outcome would be different if the probability is sufficient to undermine confidence in the outcome. *Id*.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

The burden is on the defendant to establish the factual predicate for an ineffective-assistance claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). To succeed, "a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015) (quotation marks and citation omitted). When presuming that counsel rendered effective assistance, this Court should "affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted). Counsel is not ineffective for failing to make a meritless argument or raise a futile objection. *Isrow*, 339 Mich App at 532.

## A. DIRECTED VERDICT

Trial counsel was not ineffective for failing to move for a directed verdict because the motion would have been unsuccessful.

When a criminal defendant moves for a directed verdict, the trial court must consider the prosecution's evidence in the light most favorable to the prosecution and determine if a reasonable trier of fact could have found each element of the offense beyond a reasonable doubt. *In re LT*, 342 Mich App 126, 135; 992 NW2d 903 (2022). If a motion for directed verdict would have been successful, defense counsel is ineffective for failing to raise it. See *id*.

After the prosecution rested, the court asked if defense counsel would be moving for a directed verdict. Defense counsel declined. Defendant contends that this failure made defense counsel's performance fall below an objective standard of reasonableness, especially because the court suggested a motion for a directed verdict. However, defendant does not argue why such a motion would have been successful. Viewing the evidence in the light most favorable to the prosecution, it is unlikely that the motion would have succeeded. As discussed, the prosecution presented testimony from Johnson that she obtained her methamphetamine from defendant. Police found methamphetamine and drug paraphernalia in defendant's garage, with defendant present. Additionally, defendant admitted to police that there would be drugs on the coffee table and that he purchased the methamphetamine himself. While Johnson gave contradictory testimony, the trial court would have had to view her testimony in the light most favorable to the prosecution. This evidence would be sufficient for a reasonable trier of fact to determine beyond a reasonable doubt that defendant knowingly possessed methamphetamine. See *id*.

Moreover, although in the context of defendant's request for a lesser included instruction on use of a controlled substance, the trial court explained its belief that evidence of possession was presented during the prosecution's case-in-chief:

> He said he had it with him. He knew right where it was. There's clearly either direct but definitely circumstantial evidence that he possessed it, since he knew where it was, it was his room, his garage, and the other witness testified that they had it and used it together. That's enough to demonstrate possession.

Considering the evidence presented at that time and the trial court's indication that sufficient evidence was presented for the fact-finder to conclude defendant knowingly possessed methamphetamine, we conclude that a motion for a directed verdict would likely have failed. Trial

counsel was not ineffective for failing to make a meritless motion for a directed verdict. See *Isrow*, 339 Mich App at 532. Trial counsel was therefore not ineffective for declining to move for a directed verdict.

Defendant additionally contends that, had trial counsel moved for a directed verdict, it would have preserved an additional issue for appeal. Defendant does not identify what this issue is. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v DeRousse*, 341 Mich App 447, 466 n 10; 991 NW2d 596 (2022) (quotation marks and citation omitted). This argument is therefore abandoned.

## B. PROSECUTORIAL MISCONDUCT

Because there was no prosecutorial misconduct, trial counsel was not ineffective for failing to object to the prosecution's closing argument. As discussed, there was no prosecutorial misconduct because a prosecutor is permitted to argue from the facts that a defendant or a witness is not credible. The prosecution used defendant's prior admissions to police, which were admitted in police testimony and in the video of defendant's police interview, to demonstrate that defendant's testimony was not worthy of belief. This is not prosecutorial misconduct. Any objection to this closing argument therefore would have been futile. See *Isrow*, 339 Mich App at 532. Because trial counsel is not ineffective for failing to raise a futile objection, trial counsel was not ineffective for failing to object to the prosecution's closing argument.

## C. JURY POLL

Defendant's statement of questions presented did not identify the argument that counsel was ineffective for failing to poll the jury. Defendant has therefore waived appellate review of this issue. See MCR 7.212(C)(5), *People v Anderson*, 331 Mich App 552, 559 n 1; 953 NW2d 451 (2020). In any event, defendant has failed to identify any prejudice stemming from the alleged error.

Affirmed.

/s/ Stephen L. Borrello
/s/ James Robert Redford
/s/ Sima G. Patel