*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ARMAINE DELAWN HARDY,

Defendant-Appellant.

UNPUBLISHED
September 26, 2025
11:38 AM

No. 368489
Oakland Circuit Court
LC No. 2023-283210-FH

Before: GADOLA, C.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

Defendant, Armaine Delawn Hardy, appeals as of right his jury-trial convictions of possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*), and possession with intent to deliver cocaine, MCL 333.7401(2)(a)(*iv*). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 10 to 30 years' imprisonment for possession with intent to deliver methamphetamine, and 3 to 20 years' imprisonment for possession with intent to deliver cocaine. We affirm.

## I. FACTS

On the night of January 21, 2022, Detective Steven Lundquist with the Oakland County Sheriff's Department was working with a unit focused on investigating drug and gun offenses when he stopped a white Chevy Equinox in Pontiac for a traffic violation. The driver of the car did not provide a driver's license, but identified himself as Aaron Hardy (Hardy). After comparing the information for Hardy on the Law Enforcement Information Network (LEIN) with the driver's appearance, Lundquist released the driver, believing that the driver was Aaron Hardy.

Shortly thereafter, Lundquist learned that a man named Anthony Bridges had posted a Facebook video showing himself getting pulled over by Lundquist. Lundquist recognized Bridges as the driver of the white Chevy Equinox. After searching LEIN, Lundquist learned that Bridges had outstanding warrants and lived at 173 Fulton in Pontiac. Lundquist learned that defendant, Armaine Hardy, also was a resident of 173 Fulton and also had outstanding warrants.

-1-

Lundquist drove to 173 Fulton where he was joined by other detectives in the unit to effectuate the arrest warrants. The white Chevy Equinox was parked in the driveway. When no one responded to their knock on the door, the detectives entered the house. Once inside, Lundquist saw defendant run down the hallway into the northeast bedroom of the home. The detectives ultimately located and arrested Bridges inside the house, along with Aaron Hardy, Jermaine Jackson, and Juwan Moore.

Lundquist saw a bag of white pills on the kitchen table containing what was later identified as 149 oxycodone pills, and two digital scales. In the living room, Lundquist saw a prescription bottle with "perks" handwritten on the label containing what was later identified as 53 oxycodone pills. He later testified that "perks" is slang for Percocet, a controlled substance containing oxycodone. Based on this evidence, the detectives obtained a warrant to search the house.

While executing the search warrant, the officers discovered in the living room a baggy containing 14 grams of crack cocaine, $700, a digital scale, and a cell phone. In the kitchen, in addition to the bag containing 149 pills of oxycodone and two digital scales, the officers found four cell phones. Inside a kitchen cabinet, the officers found a nine-millimeter handgun with the magazine inserted containing 17 rounds of ammunition and a bottle of amoxicillin prescribed to defendant. In another cabinet, officers found a bottle of codeine with its label partially removed and Bridges' identification card. The officers found two pill presses inside a microwave in the laundry room of the house.

In the southeast bedroom, the officers found a sandwich bag containing 188 grams of methamphetamine. On a dresser were two bills, one addressed to Aaron Hardy and the other addressed to Bridges. Inside a nightstand, the officers found $129 in one-dollar bills and a debit card bearing Bridges' name. In the closet in the bedroom, officers found a suitcase with clothing, a magazine for a handgun, and paperwork containing defendant's name; defendant admitted to police that the suitcase and the items found inside the suitcase belonged to him. In a dresser in the northeast bedroom, officers found $4,500 in cash, a bag containing 7 grams of heroin, a bag containing 31 grams of methamphetamine, and a gun light for a pistol. On top of the dresser, the officers found a W-2 belonging to defendant. Under a mattress in that bedroom, the officers found two empty pistol magazines.

Officers also discovered a post on defendant's Facebook account, posted several hours before the search warrant was executed, showing defendant holding a prescription bottle with white pills, which was the same bottle officers found in the living room. A second video from defendant's Facebook account displayed a bottle with liquid inside and a prescription label partially removed.

During a police interview, defendant stated that Aaron Hardy and Anthony Bridges are his brothers. He stated that 173 Fulton was a house that had belonged to his deceased grandmother, that he used that address for his Secretary of State identification, and that he sometimes stayed there. He admitted that the prescription bottle of amoxicillin and the money found in the living room belonged to him, and admitted posting the Facebook video of himself with the pill bottle, but stated that the pills did not belong to him. Defendant stated that the $700 found in the living room was his, and that the bottle of codeine also was his. He told police that formerly he had sold pills, but no longer did so.

Defendant was charged with four counts of possession with intent to deliver methamphetamine, oxycodone, heroin, and cocaine. At trial, Rachel Scott, a forensic laboratory supervisor with the Oakland County Sheriff's Department, testified that the items recovered from the house included 186.6 grams of methamphetamine, oxycodone, 5.34 grams of heroin, and 13.15 grams of cocaine. Sergeant Dan Main with the Oakland County Sheriff's Department, qualified as an expert witness in the area of drug trafficking, testified that the items discovered at the house were consistent with the intent to deliver drugs rather than personal use.

Lundquist testified that the recordings of defendant's calls while in jail included a call in which defendant asked the person to whom he was speaking to collect $7,500 on behalf of defendant, and stated names and how to contact the people who owed him money. In another call, defendant stated that "Well, they got my money, they're lying, I had [$]10,000 over there," referring to money located at 173 Fulton. During another call, defendant discussed that every time he was away, "they fall apart" and that "I know I'm the one, but come on, man, ya'll gotta get this sh*t together," and told the person on the telephone not to let anything happen "on that dead end" referring to 173 Fulton, which is located on a dead-end street. Lundquist testified that the calls indicated that defendant was collecting drug debts.

At the conclusion of trial, the jury convicted defendant of possession with intent to deliver methamphetamine and cocaine, but acquitted him of possession with intent to deliver oxycodone and heroin. Defendant now appeals.

## II. DISCUSSION

## A. INSTRUCTIONAL ERROR

Defendant contends that the trial court abused its discretion by declining to give the jury model criminal jury instruction 8.5 (M Crim JI 8.5), which states that a defendant's mere presence during the planning or commission of a crime is not sufficient to establish that the defendant assisted in committing the crime. Defendant also contends that the trial court denied him the right to present a defense by failing to instruct the jury on his theory of defense. We disagree.

We review de novo a claim of instructional error involving a question of law; we review for an abuse of discretion whether a jury instruction applies to the facts of the case. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). A trial court abuses its discretion when its decision is outside the range of reasonable and principled outcomes. *People v Allen*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 352625); slip op at 4. We read jury instructions as a whole; even if imperfect, jury instructions do not create error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights. *People v Blevins*, 314 Mich App 339, 353; 886 NW2d 456 (2016). We review de novo the constitutional question whether a defendant was denied the right to present a defense. *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 8.

A trial court is required to properly instruct the jury. *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018). Jury instructions must include the elements of the charged offenses and any material issues, defenses, and theories supported by the evidence. *Id*. The trial court does not

infringe upon the defendant's constitutional right to present a defense by declining to give the jury an instruction not supported by the evidence. See *Smith*, ___ Mich App at ___; slip op at 9-10.

The defendant has the burden of demonstrating that the asserted instructional error resulted in a miscarriage of justice. *Dupree*, 486 Mich at 702; MCL 769.26. This Court has explained that failure to give a requested instruction warrants reversal only when the requested instruction (1) is substantially correct, (2) was not substantially covered in the trial court's charge to the jury, and (3) concerns an important point in the trial so that failure to give the instruction seriously impaired the defendant's ability effectively to present a defense. *People v Moldenhauer*, 210 Mich App 158, 159-160; 533 NW2d 9 (1995).

In this case, defendant was charged with possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*); possession with intent to deliver oxycodone, MCL 333.7401(2)(a)(*iii*); possession with intent to deliver heroin, MCL 333.7401(2)(a)(*iv*); and possession with intent to deliver cocaine, MCL 333.7401(2)(a)(*iv*). The elements of possession with intent to deliver a controlled substance under MCL 333.7401 are that (1) the defendant possessed the controlled substance in question, (2) the defendant knew that he or she possessed the controlled substance, (3) the defendant intended to deliver the controlled substance to someone else, and (4) the amount of the controlled substance that the defendant intended to deliver, if applicable. See *People v Robar*, 321 Mich App 106, 115; 910 NW2d 328 (2017).

Defendant argues that his theory of defense at trial was that although he was present in the house at the time police found the illegal drugs, his presence alone was insufficient to establish that he possessed the controlled substances with the intent to deliver them. Defendant sought to have the trial court provide the jury M Crim JI 8.5, which states:

> Even if the defendant knew that the alleged crime was planned or was being committed, the mere fact that [he / she] was present when it was committed is not enough to prove that [he / she] *assisted in committing it*. [Emphasis added.]

The "mere presence" instruction is warranted in cases when the prosecution is proceeding under a theory of aiding and abetting. See *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999). M. Crim JI 8.5 is found in Chapter 8 of Michigan's model criminal jury instructions, which is entitled "Aiding and Abetting and Accessory after the Fact." Aiding and abetting is a theory of prosecution that "permits the imposition of vicarious liability for accomplices." *People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006). This Court has held that "[m]ere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to show that a person is an aider and abettor." *People v Wilson*, 196 Mich App 604, 614; 493 NW2d 471 (1992).

In this case, the prosecution did not proceed under a theory of aiding and abetting; the prosecution's theory at trial was that defendant possessed the illegal drugs with the intent to deliver them and was not acting as an accomplice. Because an instruction pertinent to aiding and abetting was not supported by the evidence, the trial court did not abuse its discretion by declining to give the jury M Crim JI 8.5.

At trial, defendant also contended that the prosecution did not prove the elements of the offenses, arguing that the prosecution did not establish that defendant possessed the illegal substances. The model jury instruction relevant to this inquiry is M Crim JI 12.7, which provides:

Possession does not necessarily mean ownership. Possession means that either:

(1) the person has actual physical control of the [substance/thing], as I do with the pen I am now holding, or

(2) the person has the right to control the [substance/thing], even though it is in a different room or place.

Possession may be sole, where one person alone possesses the [substance/thing].

Possession may be joint, where two or more persons each share possession.

It is not enough if the defendant merely knew about the [state substance or thing]; the defendant possessed the [state substance or thing] only if [he/she] had control of it or the right to control it, either alone or together with someone else.

In this case, the trial court instructed the jury on each element of each offense with which defendant was charged and instructed the jury that the prosecution was required to prove each element of each charged offense. The trial court further instructed the jury on the meaning of possession in accordance with M Crim JI 12.7. These jury instructions were supported by the evidence. The prosecution presented evidence that when the officers entered the house on the night in question, Lundquist saw defendant run down the hallway and into the northeast bedroom. While executing the search warrant, officers found that a dresser in the northeast bedroom contained $4,500 in cash, a bag containing heroin, a bag containing methamphetamine, and a gun light for a pistol. On top of the dresser was a W-2 belonging to defendant and under the mattress they found two empty magazines.

In the southeast bedroom, the officers found a suitcase containing clothing, paperwork, and a gun magazine that defendant admitted belonged to him. Defendant also admitted that the pill bottle and cash found in the living room belonged to him, and that in the Facebook video he is holding the pill bottle. While in jail, defendant made statements on the telephone that suggested that he was engaged in drug trafficking. Because the record supports the trial court's instructions to the jury, no miscarriage of justice occurred.

Defendant also argues that he was not permitted a meaningful opportunity to present a defense because the trial court did not read the statement of his theory of defense to the jury. A criminal defendant is entitled to "a meaningful opportunity to present a complete defense." *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012); see U S Const, Ams VI and XIV; see also Const 1963, art 1, §§ 13 and 20. An instructional error that directly affects the defendant's theory of defense can contravene a defendant's due process right to present a defense. *People v Kurr*, 253 Mich App 317, 326-327; 654 NW2d 651 (2002).

In this case, defendant requested that the trial court instruct the jury that his theory of the case was that the prosecution failed to prove all elements of the offenses and demonstrated only

that defendant was present at the house at the time the search warrant was executed. Although the trial court did not read the defendant's statement of his theory of defense to the jury, the trial court instructed the jury on each element of the offenses and that the prosecution was obligated to prove each element of the offenses charged. The jury instructions taken as a whole sufficiently protected defendant's rights, and as a result no instructional error occurred. See *People v Flores*, 346 Mich App 602, 612; 13 NW3d 668 (2023).

## B. PROSECUTORIAL ERROR

Defendant contends that he was deprived of a substantial defense because defense counsel at trial did not call as witnesses Anthony Bridges and Aaron Hardy. Defendant argues that the witnesses were not called because they were threatened by the prosecution resulting in prosecutorial error.[1] We disagree.

Because defendant did not object to or raise a concern regarding the prosecutor's purported threats against Hardy and Bridges at trial, this issue is unpreserved. See *People v Evans*, 335 Mich App 76, 88; 966 NW2d 402 (2020). We review unpreserved issues for plain error affecting the defendant's substantial rights, meaning that the error (1) occurred, (2) was clear or obvious, and (3) affected defendant's substantial rights, meaning that the error affected the outcome of the lower court proceedings. *Id.* "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks and citation omitted).

The test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Attempts by the prosecution to intimidate witnesses from testifying, if successful amount to a denial of a defendant's constitutional right to due process of law." *People v Hill*, 257 Mich App 126, 135; 667 NW2d 78 (2003).

In this case, defense counsel at trial stated that he intended to call Jermain Jackson and Anthony Bridges as witnesses. The next day, Jackson's attorney stated that Jackson did not wish to testify. Defense counsel confirmed that he intended to proceed without Jackson's testimony, and noted that Bridges also was "reluctant to testify," and defense counsel was "not going to force him to testify." Defendant argues that the prosecutor threatened Bridges and also Aaron Hardy, resulting in their refusal to testify.

The record, however, does not support defendant's assertion. Aaron Hardy and Bridges were present at the house on the night of defendant's arrest, and both faced prosecution for charges in connection with the illegal drugs police found at the house. In support of his motion to remand this case to the trial court, defendant submitted an affidavit signed by Bridges stating that he would have testified at defendant's trial and would have stated that the methamphetamine found at the house on the night of the search belonged to him and not to defendant, but decided not to testify

---

[1] Also referred to as "prosecutorial misconduct." See *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

after being cautioned by his own attorney and defendant's attorney that the charges and penalties against him might be increased if he so testified. The affidavit does not state that the prosecutor threatened Bridges, nor that the prosecutor even contacted Bridges.

Similarly, defendant submitted Aaron Hardy's affidavit stating that he was willing to testify that on the night of the search, he did not see defendant with any drugs and "had no knowledge" that defendant possessed any of the drugs in the house when it was searched. The affidavit does not state that Aaron Hardy had any contact with the prosecutor, but rather states that he was advised by defendant's attorney that his testimony could result in him receiving a more serious charge or sentence. Because there is no evidence that the prosecutor threatened the witnesses, or even had contact with the witnesses, we find no prosecutorial error.

### C. INEFFECTIVE ASSISTANCE OF COUNSEL

Although defendant's argument is not entirely clear, defendant appears to contend that defense counsel was ineffective for failing to object to the prosecution threatening Bridges and Hardy, and was also ineffective for failing to call Bridges and Hardy as witnesses. We disagree.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law. *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). We review findings on questions of fact for clear error, while reviewing rulings on questions of constitutional law de novo. *Id.* Although defendant preserved this issue by a motion for remand, because no *Ginther*[2] hearing was held, our review is limited to mistakes apparent on the record. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019).

The United States and Michigan Constitutions guarantee a defendant's right to a fair trial, US Const, Am VI; Const 1963, art 1, § 17, which includes the right to the effective assistance of counsel, *Yeager*, 511 Mich at 488. To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant claiming ineffective assistance of counsel must overcome the strong presumption that counsel's performance was sound trial strategy. *Id.*

We reject defendant's suggestion that defense counsel at trial was ineffective for failing to object to the prosecution threatening the prospective witnesses. To establish ineffective assistance of counsel, defendant must establish the factual predicate for the claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). Here, because there is no evidence that the prosecutor threatened Bridges or Aaron Hardy, defendant failed to establish the factual predicate for his claim that defense counsel was ineffective for failing to object to the alleged prosecutorial error. In

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

addition, failing to advance a meritless or futile argument does not constitute ineffective assistance of counsel. *People v Baham*, 321 Mich App 228, 236; 909 NW2d 836 (2017).

Defendant also has failed to establish that defense counsel at trial was ineffective because he failed to call Bridges and Aaron Hardy as witnesses. To establish ineffective assistance of counsel, the defendant must overcome the strong presumption that counsel's performance arose from sound trial strategy, *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015), and the decision whether to call a witness is presumed to be a matter of trial strategy, *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015). Counsel is not ineffective merely because a trial strategy was unsuccessful. *People v White*, 331 Mich App 144, 149; 951 NW2d 106 (2020).

In this case, defense counsel informed the trial court that he intended to call Bridges as a witness. After conferring with his appointed counsel, Bridges decided to not testify, and defense counsel also decided not to call Aaron Hardy. Declining to call Bridges and Hardy can reasonably be seen as sound trial strategy. The record suggests that the brothers together were trafficking drugs, and calling Bridges and Hardy as witnesses carried with it certain risks that testimony detrimental to defendant might be produced. Moreover, even if Bridges and Hardy had testified that the controlled substances in the house did not belong to defendant, his possession of the substances would not necessarily be refuted by their possession of the substances, given that possession may be shared. See *Baham*, 321 Mich App at 247. Defendant has not demonstrated that counsel's decision not to call the witnesses was not sound trial strategy.

Affirmed.

/s/ Michael F. Gadola
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock